2026 IL App (1st) 241091-U

FOURTH DIVISION
Order filed: May 28, 2026

No. 1-24-1091

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 2152 |
| | ) | |
| LOVELL BOYD, | ) | Honorable |
| | ) | Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the second-stage dismissal of defendant's postconviction petition asserting that his sentencing hearing did not comply with *Miller v. Alabama*, 567 U.S. 460 (2012), and his sentence violated the proportionate penalties clause of the Illinois Constitution. Postconviction counsel did not provide unreasonable assistance.

¶ 2    Defendant Lovell Boyd appeals the circuit court's second-stage dismissal of his petition for postconviction relief filed under the Post-Conviction Hearing Act ("Act") (725 ILCS 5/122-1 *et seq.* (West 2020)). Defendant argues only that postconviction counsel provided unreasonable

assistance by failing to adequately amend his *pro se* petition and present his claim that the imposition of his *de facto* life sentence did not comply with *Miller v. Alabama*, 567 U.S. 460 (2012), and therefore violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970 art. 1, § 11). For the following reasons, we affirm the dismissal of defendant's petition.

¶ 3        During a jury trial in 2008, the evidence showed that, in 2003, when he was 20 years old, defendant was standing in front of an apartment building when he fired an AK-47 assault rifle at a vehicle that Anthony Jefferson was driving. Jefferson was shot and killed. The jury convicted defendant of two counts of first degree murder and specifically found that "during the commission of the offense of first degree murder the defendant personally discharged a firearm."

¶ 4        Before imposing defendant's sentence, the trial court gave defendant an opportunity to make a statement, which he declined. The court noted that it reviewed the pre-sentence investigation report and considered the statutory factors in aggravation and mitigation, defendant's criminal and social history, and the facts of the case. The court then observed that defendant "opened fire with an AK-47 standing in front of a building," Jefferson "did nothing but drive in front of that building when [defendant] opened fire," defendant "had been given opportunity after opportunity at rehabilitation" prior to the offense at issue, defendant had intimidated a witness into not testifying against him, and, during his time in jail, defendant had been "unable to conform with the rules and regulations of the jail," as testified to by three correctional officers at the sentencing hearing. "Based on the facts of this case, [defendant's] criminal and social history, [and] for the protection of society," the court sentenced defendant to a total of 60 years in prison, including 40 years for the murder conviction and a mandatory 20-year term for personally discharging a firearm

during the commission of the offense. This court affirmed defendant's convictions and sentence on direct appeal. See *People v. Boyd*, 398 Ill. App. 3d 1099 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    On July 8, 2020, defendant filed a *pro se* "Motion for Leave to File Successive Postconviction Petition," in which he raised an actual innocence claim based on newly discovered evidence, attaching affidavits from two alleged witnesses to the shooting who identified someone else as the shooter. Although defendant titled the filing as a motion for leave to file a successive petition, the record does not contain any prior petition, and the court and the parties treated this filing as defendant's initial petition.

¶ 6    While that petition was pending, on October 28, 2020, defendant filed a *pro se* "Petition for relief from judgments to modify void order of commitment and sentence under Section 2-1401(f)." Defendant argued that his sentence was unconstitutional as applied to him under the proportionate penalties clause and that he should be eligible for parole review after 20 years based on the principles discussed in *Miller* and section 5-4.5-115 of the Unified Code of Corrections ("Code") (730 ILCS 5/5-4.5-115(b) (West 2020)), which grants such eligibility to young adults convicted of first degree murder who were sentenced after June 1, 2019.

¶ 7    On March 4, 2021, defendant filed a *pro se* "Motion for Leave to File Amended Successive Post-Conviction Petition" and a "Verified Successive Petition for Post-Conviction Relief" in which he consolidated and amended his previous two filings. Relevant to the present appeal, defendant amended his proportionate penalties clause claim by asserting that he is serving a *de facto* life sentence according to *People v. Buffer*, 2019 IL 122327, and that the trial court was therefore required by *Miller* to consider his youth and its attendant circumstances in sentencing

him, which it did not do. In support of his claim, defendant cited Illinois case law, *amicus* briefs from other cases, and law review articles discussing the science of adolescent brain development in the context of criminal culpability and sentencing.

¶ 8    Regarding the circumstances of youth, defendant claimed in his amended petition that, at the time of the shooting, he was the functional equivalent of a juvenile, a contention that he supported with details of his personal history. Specifically, he alleged that he had "suffered difficulties functioning at a normal grade level" since elementary school; he was placed in behavior disorder education, special education, and alternative classes; he started smoking marijuana and cigars, drinking alcohol, and using PCP and "pills" before reaching eighth grade; teachers and school staff questioned his mental health; at school, he had to cope with fights, shootings, beatings, and drug deals; his neighborhood was plagued by gangs, drugs, prostitution, and violence; he attended numerous youth funerals; he saw extreme abuses of drugs and alcohol; he "suffered being shot/stabbed;" by the age of 15, he had been referred to a psychiatrist numerous times; and when he was unable to keep up in school, he was ultimately expelled. Defendant also alleged that he demonstrated signs of maturity and rehabilitative potential while incarcerated. He requested that he be granted parole review after serving 20 years of his sentence.

¶ 9    The record reflects that the court generally continued all three of defendant's petitions, and private counsel entered his appearance for defendant. On June 30, 2021, and at counsel's request, the court advanced the petition to the second stage. The court did not make a determination that the petition presented the gist of a meritorious claim. On September 28, 2021, counsel filed an amendment to defendant's *pro se* petition, as well as a certificate pursuant to Illinois Supreme Court Rule 651 (eff. July 1, 2017), affirming that he had "made amendments to the Petitions that

[defendant] filed that are necessary for a presentation of his contentions." Counsel's amendment added a claim that trial counsel rendered ineffective assistance at sentencing, but it did not amend or otherwise supplement defendant's actual innocence or proportionate penalties clause claims. In January 2022, counsel clarified that his September 28, 2021, amendment adopted and incorporated the claims raised in defendant's *pro se* petitions.

¶ 10    On June 8, 2022, the State answered defendant's petition and generally denied his allegations, but agreed to a third-stage evidentiary hearing on his actual innocence claim. Following that evidentiary hearing, the trial court dismissed that portion of defendant's petition. That dismissal is not at issue in this appeal.

¶ 11    The State then filed a motion to dismiss defendant's remaining claims. In relevant part, the State argued that *Buffer* and *Miller* only apply to juveniles, not to young adults like defendant, and that the trial court considered all necessary factors when imposing defendant's sentence.

¶ 12    Following a hearing, on May 7, 2024, the circuit court dismissed the remainder of defendant's petition. The court noted that it treated defendant's amended petition as his initial postconviction petition and conducted a second-stage review. The court found that defendant's proportionate penalties clause claim failed because his sentence was discretionary and the trial court considered all relevant and necessary factors, including the evidence presented at trial, the presentence investigation report, the factors presented in aggravation, defendant's age, defendant's criminal and social history, and defendant's rehabilitative potential. This appeal follows.

¶ 13    Defendant argues that his postconviction counsel provided unreasonable assistance by not adequately amending and supplementing his proportionate penalties claim to include relevant neurological research and allegations connecting that research to his facts and circumstances.

¶ 14    In postconviction proceedings, unlike at trial, a defendant does not have a constitutional right to the assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Instead, the right to counsel is granted by the Act, and that right only entitles a defendant to a "reasonable" level of assistance. *Id.* (citing *People v. Flores*, 153 Ill. 2d 264, 276 (1992)). This is a lesser level of assistance than that afforded by the federal and state constitutions. *Id.* (citing *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)). To ensure that a defendant receives that level of assistance, Rule 651(c) requires postconviction counsel to file a certificate affirming that counsel has consulted with the defendant to ascertain the nature of his or her claims, has examined the record of the trial proceedings, and "'has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions.'" *Id.* ¶ 20 (quoting Ill. S. Ct. R. 651(c)). Substantial compliance with the requirements of Rule 651(c) is sufficient. See *People v. Wright*, 149 Ill. 2d 36, 67 (1992).

¶ 15    "[O]nce postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises." *Addison*, 2023 IL 127119, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 32). "The defendant bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule." *Id.* (citing *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26). "The defendant may do so by, *inter alia*, demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition," including amendments necessary to overcome procedural bars. *Id.* "We review a trial court's dismissal of a postconviction petition at the second stage *de novo*." *Id.* ¶ 17 (citing *People v. Dupree*, 2018 IL 122307, ¶ 29).

¶ 16    In this case, defendant's postconviction counsel filed a Rule 651(c) certificate affirming that, among other things, he made all necessary amendments to defendant's *pro se* petition. This certification creates a presumption of reasonable assistance. See *id.* ¶ 21. Defendant argues, however, that the record rebuts this presumption because his petition did not contain necessary allegations and evidentiary support to present his proportionate penalties clause claim in the proper legal form. Our evaluation of defendant's argument must start with defining the nature of the claim.

¶ 17    In *Miller*, the United States Supreme Court held that, because children must be treated differently for purposes of sentencing, the eighth amendment forbids mandatory sentences of life without the possibility of parole for juvenile offenders convicted of murder. 567 U.S. at 471-72, 479. It further held that, before imposing a life sentence on a juvenile, a court must have the discretion to consider the defendant's youth and its attendant characteristics. *Id.* at 483.

¶ 18    Although *Miller* and its progeny directly apply only to juvenile offenders, the Illinois Supreme Court has recognized that young adult offenders serving life sentences may rely on the evolving science of adolescent brain development to raise a *Miller*-based as-applied constitutional challenge under the proportionate penalties clause of the Illinois Constitution. See *People v. Harris*, 2018 IL 121932, ¶¶ 45-48. That clause prohibits a court from imposing a sentence that is so wholly disproportionate to the offense that it shocks the moral sense of the community. *Id.* ¶ 35. To establish such a claim,

> "a young adult offender is required to allege and ultimately demonstrate that (1) at the time of the commission of the underlying offense, his or her own specific characteristics—those related to youth, level of maturity, and brain development—placed him or her in the same category as juvenile offenders described in *Miller* and (2) his or her sentencing was not

*Miller* compliant, in that a life sentence was imposed without regard for the offender's youth and its attendant characteristics." *People v. Cortez*, 2021 IL App (4th) 190158, ¶ 47.

¶ 19 Defendant contends in this appeal that his postconviction counsel rendered unreasonable assistance by not amending his petition to ensure that it contained allegations and evidence establishing that he was in the same category as the juveniles at issue in *Miller*. In particular, defendant argues that counsel should have (1) amended his petition to include relevant neurological research and allegations applying that research to his case; (2) submitted affidavits from family members who knew him at a young age; and (3) hired an expert on adolescent brain development to testify about the characteristics of his youth and his emotional issues at the time of the offense. For the following reasons, we reject defendant's argument.

¶ 20 First, defendant's *Miller*-based proportionate penalties clause claim has been foreclosed by recent Illinois Supreme Court decisions clarifying that only young-adult defendants who received *mandatory* life sentences may bring such a claim. See *People v. Hilliard*, 2023 IL 128186, ¶ 28. "The reasoning in *Miller* does not apply to discretionary life sentences under proportionate penalties clause standards where the circuit court does consider all relevant mitigating factors at sentencing and the circuit court's exercise of discretion is supported by the evidence in the record." *People v. Clark*, 2023 IL 127273, ¶ 72.

¶ 21 Here, defendant is not serving a mandatory life sentence. He was convicted of first degree murder, which, at that time, carried a sentencing range of 20-60 years in prison. See 730 ILCS 5/5-8-1(a)(1)(a) (West 2002). The jury's finding that defendant personally discharged a firearm during the commission of the offense required that 20 more years be added to his sentence. See 730 ILCS 5/5-8-1(a)(1)(d)(ii). Thus, the mandatory component of defendant's 60-year sentence was 40 years

(20 years for murder plus the 20-year firearm enhancement). A 40-year sentence does not qualify as a *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶¶ 41-42 (holding that a *de facto* life sentence is one that is "greater than 40 years" and that "a prison sentence of 40 years or less" does not so qualify). Because the court had the discretion to sentence defendant to 40 years—a non-life sentence—defendant's resulting *de facto* life sentence was discretionary rather than mandatory. See *Clark*, 2023 IL 127273, ¶ 72 (explaining that the defendant's 60-year sentence for first degree murder of a person over 60 years old was a discretionary, and not mandatory, *de facto* life sentence when the minimum sentence was 20 years and the court had the discretion to sentence the defendant to 40 years or less). Accordingly, *Miller* is not applicable to defendant's sentence, and he cannot raise a *Miller*-based proportionate penalties clause claim. See *id.*

¶ 22 The Second District's decision in *People v. Kulpin*, 2025 IL App (2d) 240065, *petition for leave to appeal denied*, 270 N.E.3d 811 (Sept. 24, 2025), presents a virtually identical situation to this case. There, the defendant was sentenced to 60 years' imprisonment for first degree murder, plus 3 years for concealment of a homicidal death. *Id.* ¶¶ 3-4. He was 20 years old at the time of the offense. *Id.* ¶ 5. The defendant filed a *pro se* postconviction petition raising a claim that trial counsel rendered ineffective assistance by failing to argue that, based on *Miller*, his 63-year *de facto* life sentence violated the proportionate penalties clause. *Id.* ¶ 8. The defendant's postconviction counsel amended the *pro se* petition. *Id.* ¶ 9. The circuit court granted the State's motion to dismiss, concluding that the *pro se* and amended petitions had not sufficiently linked the science of adolescent brain development to the defendant's facts and circumstances. *Id.* ¶ 10.

¶ 23 On appeal, the defendant argued that postconviction counsel failed to provide reasonable assistance by not making necessary amendments connecting the brain development science to his

case. *Id.* ¶ 12. The appellate court examined the defendant's sentence and found that his 63-year *de facto* life sentence was discretionary rather than mandatory because his minimum aggregate sentence was 22 years, including 20 years for first degree murder and 2 years for concealment. *Id.* ¶ 21. The court therefore concluded that, based on the supreme court's decisions in *Clark*, *Hilliard*, and *People v. Williams*, 2024 IL 127304, the defendant's *Miller*-based proportionate penalties clause claim "is without merit, as *Miller* is not applicable to his discretionary sentence." *Kulpin*, 2025 IL App (2d) 240065, ¶ 21. Based on that conclusion, the court rejected the defendant's argument that postconviction counsel had not provided reasonable assistance, finding that, because his "underlying argument has no merit as a matter of law, any amendments cannot be deemed 'necessary' under the meaning of Rule 651(c)." *Id.* ¶ 16.

¶ 24 Defendant's case is materially indistinguishable from *Kulpin*. Because defendant was sentenced to a discretionary *de facto* life sentence, he cannot challenge such a sentence on *Miller* principles under the proportionate penalties clause. Thus, defendant cannot establish that his counsel rendered unreasonable assistance by not amending his claim in the manner that he suggests, as such amendments could not have benefitted his meritless claim and therefore were not necessary under Rule 651(c).

¶ 25 Second, even if defendant could raise a *Miller*-based proportionate penalties claim, we agree with the circuit court that his sentencing hearing complied with *Miller*. When, as in this case, a sentencing court has the discretion to sentence a defendant to a non-life sentence and to consider all relevant factors, including the defendant's youth and its attendant circumstances, a resulting *de facto* life sentence does not violate *Miller*. See *People v. Dorsey*, 2021 IL 123010, ¶ 66 (observing that a sentencing decision imposed where "the trial court had discretion to consider defendant's

youth and impose less than a *de facto* life sentence" complies with *Miller*). Indeed, "unless the sentencing court 'expressly refuses as a matter of law to consider the defendant's youth \*\*\*, a discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *Wilson*, 2023 IL 127666, ¶ 38; see also *People v. Jones*, 2021 IL 126432, ¶ 28 (noting that "*Miller*'s additional protections for juvenile offenders apply only when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence").

¶ 26    At no point did the trial court refuse to consider defendant's youth. Rather, it stated that it had "reviewed the pre-sentence investigation, considered the factors in aggravation and mitigation as set out in the statute, [defendant's] criminal history, [and] [defendant's] social history." The court also observed that defendant "had been given opportunity after opportunity at rehabilitation" prior to murdering Jefferson. That "consideration of rehabilitative potential necessarily encompasses consideration of transient characteristics of young adulthood, such as immaturity and impetuousness." *People v. Garcia*, 2024 IL App (2d) 210488-B, ¶ 18. Thus, the record demonstrates that defendant was afforded a sentencing procedure that considered his age and immaturity and complied with *Miller*. See *Kulpin*, 2025 IL App (2d) 240065, ¶ 24 (holding that the defendant's sentencing hearing complied with *Miller* when his minimum sentence for first degree murder and concealment of a homicidal death was 23 years, making his 60-year sentence a discretionary *de facto* life sentence, and the trial court had the discretion to consider the defendant's youth and did not refuse to do so when imposing his sentence); *People v. Paige*, 2023 IL App (1st) 220925-U, ¶ 49 ("Where defendant was sentenced under a scheme that gave the court discretion to consider his youth and potentially impose a less than a *de facto* life sentence, and the

court did not refuse as a matter of law to consider defendant's youth, he received the constitutional protections required under *Miller*.").

¶ 27    Because defendant received a discretionary *de facto* life sentence, making *Miller* inapplicable, and his sentencing proceeding complied with *Miller*, his *Miller*-based proportionate penalties clause claim is legally meritless, and defendant's desired amendments would have no effect on this outcome.

¶ 28    Defendant contends that we cannot consider the merits of his claim, citing *Addison*'s holding that "harmless error analysis does not apply where compliance with Rule 651(c) is not shown." *Addison*, 2023 IL 127119, ¶ 35. However, we find *Addison* distinguishable. In *Addison*, the circuit court found that the defendant's *pro se* petition presented the gist of a constitutional claim, appointed counsel, and advanced it to the second stage. *Id.* ¶¶ 8, 26. Postconviction counsel determined that only five of defendant's 15 claims were worth pursuing, but failed to shape the claims into their proper form. *Id.* ¶ 26. Rather, counsel removed the allegations from the *pro se* petition regarding ineffective assistance of appellate counsel, making the claims worse through her amendment and resulting in all of defendant's claims being forfeited. *Id.* ¶¶ 23-26 ("We cannot hold that postconviction counsel provided reasonable assistance where she identified several claims that she believed were worth pursuing but did not make the necessary amendments to put the claims in their proper forms. Worse than that, she *eliminated* the necessary allegations that defendant had included in the *pro se* petition." (Emphasis in original.)).

¶ 29    Unlike in *Addison*, the trial court in this case did not make a determination that defendant's petition stated the gist of a constitutional claim, but advanced defendant's petition to the second stage due to the passage of time and at private counsel's request. Further, the trial court did not

dismiss defendant's petition because it was not in the proper form or find that his claims had been forfeited. Rather, the trial court addressed defendant's claim on the merits and held that defendant's sentencing hearing complied with *Miller*. Thus, *Addison* is distinguishable.

¶ 30    Here, postconviction counsel did not render unreasonable assistance by not amending defendant's proportionate penalties claim. As explained above, defendant is precluded from raising the claim as a matter of law, and his sentencing hearing was *Miller*-compliant, making the claim patently non-meritorious and further amendments unnecessary. See *Kulpin*, 2025 IL App (2d) 240065, ¶ 25; see also *People v. Swift*, 2026 IL App (2d) 240620-U, ¶ 37 (rejecting the defendant's claim of unreasonable assistance of postconviction counsel when defendant's proportionate penalties claim had no merit as a matter of law and, as a result, "[a]ny further amendments to the petition would only be tantamount to further advancing a non-meritorious claim and, thus, not necessary to advancing defendant's claim within the meaning of Rule 651(c)"). Accordingly, we affirm the dismissal of defendant's postconviction petition.

¶ 31    Affirmed.